Central Illinois Company, Appellant, v. W. E. Swanson, Appellee.

Gen. No. 39,137.

Opinion filed May 4, 1937. Rehearing denied May 18, 1937.

BELL, BOYD & MARSHALL, of Chicago, for appellant; EARL K. SCHIEK, of Chicago, of counsel.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellee; HERBERT C. DE YOUNG, of Chicago, of counsel.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

November 12, 1935, plaintiff, Central Illinois Company, filed an amended statement of claim in scire facias to revive a judgment for $482.86 entered July 20, 1926, in favor of Greenebaum Sons Bank and Trust Company and against R. M. Pederson, W. E. Swanson

and Mutual Service Corporation. Said amended statement of claim alleged that the Central Illinois Company was the assignee of such judgment, admitted satisfaction of the judgment to the extent of $58.09, and as to the balance prayed for a revival of the judgment against the three judgment debtors. Scire facias writs were issued and returned served as to Pederson and Swanson and unserved as to the Mutual Service Corporation. Pederson was thereafter defaulted. After Swanson's motion to dismiss was overruled he filed an answer denying that William L. O'Connell as receiver for the Central Republic Trust Company was the owner or holder of the original judgment, that O'Connell as such receiver had the power, right or authority to make an assignment of the aforesaid judgment to the Central Illinois Company or to anyone else, and that the Central Illinois Company "is the owner and holder, or has any interest in, or any claim to, the aforesaid judgment." Swanson demanded a jury trial, which was accorded him over the objection of plaintiff. The jury found the issues against plaintiff, and, after overruling the latter's motion for a new trial and for judgment notwithstanding the verdict, the trial court entered judgment upon the verdict against plaintiff. This appeal followed.

It is first necessary to trace the history of the judgment sought to be revived. The judgment for $482.86 was originally secured July 20, 1926, by Greenebaum Sons Bank and Trust Company against R. M. Pederson and W. E. Swanson and the Mutual Service Corporation. April 30, 1927, Greenebaum Sons Bank and Trust Company changed its name to the Bank of America. January 14, 1929, the Bank of America consolidated with the Central Trust Company of Illinois (hereinafter for convenience referred to as the Central Trust Company) under the name of the latter. July 25, 1931, the Central Trust Company consolidated

with the Chicago Trust Company, forming the Central Republic Bank & Trust Company, which changed its name to the Central Republic Trust Company November 26, 1932. William L. O'Connell was appointed receiver for the Central Republic Trust Company by the auditor of public accounts of the State of Illinois November 21, 1934.

It is admitted that as the result of the consolidation of the Bank of America and the Central Trust Company title to the judgment, originally in Greenebaum Sons Bank and Trust Company, passed to the Central Trust Company, and it must be conceded that, if the ownership of and title to said judgment were not in some manner recognized by law alienated by the Central Trust Company, such ownership and title, upon the consolidation of the Central Trust Company and the Chicago Trust Company to form the Central Republic Bank and Trust Company, became vested in the latter, which thereafter changed its name to the Central Republic Trust Company. It necessarily follows that if the Central Republic Trust Company owned the judgment when William L. O'Connell was appointed receiver for that bank, the title to same became vested in him as such receiver.

The only apparent difficulty in this case results from the execution of a written instrument by the Central Trust Company July 25, 1931, the date of its consolidation with the Chicago Trust Company, which instrument assigned or purported to assign "certain of its assets" to plaintiff. Swanson claims on the one hand that such instrument was not legally effective to assign to plaintiff the original judgment against him and the other judgment debtors, and on the other hand that this instrument and the written articles of consolidation had the legal effect of severing the chain of title to said judgment so that the ownership of and the title to same did not pass from the Central Trust Company to its

successor consolidated bank and ultimately to O'Connell as receiver thereof.

It is elementary that when two corporations consolidate the property of both of them vests in the consolidated corporation. In recognition of this rule the following paragraph is found in the Articles of Consolidation of the Central Trust Company and the Chicago Trust Company:

"(K) The consolidated corporation shall possess and be vested with all of the rights, privileges, powers, franchises, licenses, estates, effects, things in action, moneys, debts due upon whatever account, trusts and property, real, personal and mixed, of every kind and character of said Chicago Trust Company and said Central Trust Company of Illinois, and shall be subject to all of their respective debts, liabilities and duties."

With respect to certain assets of both of the consolidating banks said Articles of Consolidation provide:

"(L) As a part of the terms of consolidation,

"(1) The National Republic Company, a corporation of the State of Illinois, which acquired from Chicago Trust Company certain of its assets not going into the Consolidated Corporation, has entered into an agreement embodying certain guaranties made by the National Republic Company for the benefit of the Consolidated Corporation in respect of certain assets going into the Consolidated Corporation and against certain undisclosed and . . . other liabilities to which under some circumstances the Consolidated Corporation may be subject, and

"(2) Central Illinois Company, a corporation of the State of Illinois, which acquired from Central Trust Company of Illinois certain of its assets not going into the Consolidated Corporation, has entered into an agreement embodying certain guaranties made by Central Illinois Company for the benefit of the Consoli-

dated Corporation in respect of certain assets going into the Consolidated Corporation and against certain undisclosed and . . . other liabilities to which under some circumstances the Consolidated Corporation may be subject.''

The ''assets'' of the Central Trust Company above referred to as having been acquired by the Central Illinois Company were transferred to the latter by a written instrument captioned ''Central Trust Company of Illinois to Central-Illinois Company—Assignment and Bill of Sale—July 25, 1931,'' which provided in part as follows:

''Know All Men By These Presents: that Central Trust Company of Illinois, a Banking corporation of the State of Illinois, in consideration of the sum of One Dollar . . . and other good and valuable considerations in hand paid, the receipt whereof is hereby acknowledged, and as a part of plan of reorganization, has granted, bargained, sold and delivered, assigned, transferred and set over, and does hereby grant, bargain, sell and deliver, assign, transfer and set over unto Central-Illinois Company, a corporation of the State of Illinois, all of the following described notes, securities, and . . . other property, to wit:

''Mutual Service Corp. $316.91. . . . ''[This item was included in an attached list of numerous assigned assets.]

''And said Central Trust Company of Illinois does hereby covenant and agree to and with said Central-Illinois Company, its successors and assigns, that it, said Central Trust Company of Illinois, is the lawful owner of said notes, securities and . . . other property; that the same are free from liens and encumbrances; that it has good right, full power and lawful authority to grant, bargain and sell the same in form as aforesaid; and that it will, and its successors and assigns shall, warrant and defend the same unto said

Central-Illinois Company, its successors and assigns, against all lawful claims and demands whatsoever.

"Said Central Trust Company of Illinois further covenants and agrees that it will from time to time, upon demand of Central-Illinois Company, its successors and assigns, execute, acknowledge and deliver all such instruments of conveyance or further assurance as may be advised or reasonably required for the purpose of more fully vesting in and confirming unto said Central-Illinois Company, its successors or assigns, the notes, securities and . . . other property covered hereby or intended so to be."

The note for $375 signed by the Mutual Service Corporation, Pederson and Swanson, upon which the original judgment was confessed was also attached to said assignment and bill of sale and bore on its face the following stamp:

"Judgment entered
For $482.86
July 20, 1926
THE MUNICIPAL COURT OF CHICAGO,
James A. Kearns,
Clerk."

[It should be noted that $316.91, the amount of the claim against defendants as indicated in the schedule of assets assigned to plaintiffs by the Central Trust Company, represents the difference between $375, the principal amount of the note upon which the original judgment in question was confessed, and $58.09, which was paid on same and credit given therefor.]

April 17, 1935, just prior to the institution of the instant action, plaintiff procured and filed in the municipal court an assignment to it of said original judgment by O'Connell as receiver of the Central Republic Trust Company. Thereafter plaintiff procured from the Central Republic Trust Company a written assignment

of whatever right or interest it might still have in said judgment and in the same instrument a second assignment from O'Connell as receiver of said Central Republic Trust Company, which was approved by the court in which the receivership proceeding was pending.

The only questions presented by this appeal are whether plaintiff is the assignee of the original judgment entered in favor of Greenebaum Sons Bank & Trust Company July 29, 1926, and whether as such assignee it is lawfully entitled to revive such judgment. For a proper determination of these questions it is only necessary to consider the legal effect of the various assignments and other documents in writing offered by plaintiff and received in evidence. It appears conclusively from an inspection of the assignment and bill of sale of July 25, 1931, by the Central Trust Company to the Central-Illinois Company and of the portions of the Articles of Consolidation heretofore set forth that the only assets of the Central Trust Company that did not pass to and become vested in its successor consolidated bank, the Central Republic Bank & Trust Company, were those transferred to plaintiff under the aforementioned assignment of July 25, 1931. It cannot be doubted that said instrument was intended by the parties to transfer and assign to plaintiff whatever claim the Central Trust Company had against Swanson and the other makers of the note upon which the original judgment was confessed. The claim upon the note was included in the list of assets attached to the assignment and the note itself bearing the judgment stamp upon it was properly indorsed and likewise attached to said assignment. We agree, however, with Swanson's contention that the claim on the note having been reduced to judgment several years prior to the execution and delivery of this assignment, such claim as well as the note itself had

been merged in the judgment, that the note no longer evidenced the indebtedness, and that without a specific assignment of the judgment itself the instrument of July 25, 1931, was ineffective as a means of transferring the legal title to the original judgment to the Central Illinois Company.

It logically follows that, since the assignment of July 25, 1931, was not legally effective to transfer and vest the legal title to the judgment in plaintiff, it remained vested in the Central Trust Company. Plaintiff did become the equitable owner of the judgment and became entitled to demand that the Central Trust Company or its successor transfer and assign the legal title to the judgment to it under the following provision of the assignment and bill of sale of July 25, 1931: "Said Central Trust Company of Illinois further covenants and agrees that it will from time to time, upon demand of Central-Illinois Company, its successors and assigns, execute, acknowledge and deliver all such instruments of conveyance or further assurance as may be advised or reasonably required for the purpose of more fully vesting in and confirming unto said Central-Illinois Company, its successors or assigns, the notes, securities and . . . other property covered hereby or intended so to be." Thus the legal title to the original judgment, which it was intended should pass to plaintiff but inadvertently did not because of the aforesaid defective assignment became vested as a result of the merger of the Central Trust Company and the Chicago Trust Company in the consolidated bank, the Central Republic Bank & Trust Company, which thereafter changed its name to the Central Republic Trust Company, and ultimately in William L. O'Connell when he became receiver for the latter. The receiver, recognizing plaintiff's equitable ownership of the judgment and its right to the legal title thereto, when called upon to do so, assigned such

title to the Central Illinois Company. To remove any possible doubt as to its title to the judgment plaintiff secured an assignment from the Central Republic Trust Company, the last bank in the chain of title, of any possible remaining right or interest it might have in such judgment as well as a second assignment from the receiver, which latter was authorized and confirmed by order of the court where the receivership proceeding was pending.

We fail to perceive any flaw in plaintiff's title to the original judgment and its right to prevail in this proceeding to revive it has been clearly shown. This case did not present a single issue of fact. The only questions involved were as to the legal effect of the several written instruments in evidence and the trial court clearly erred in permitting the jury to attempt to decide what were purely questions of law. Defendant Swanson's demand for a jury trial in this cause should have been refused. The judgment sought to be revived was for $482.86. This included interest, costs and attorney's fees, as well as $375, the principal amount of the note upon which the judgment was confessed. Defendants are entitled to a credit of $58.09 on account of a satisfaction of the judgment to that extent. The balance due on the judgment is $424.77.

For the reasons stated herein the judgment of the municipal court is reversed and the cause is remanded with directions to enter an order reviving the original judgment to the extent of $424.77 as to R. M. Pederson and W. E. Swanson.

*Reversed and remanded with directions.*
FRIEND and SCANLAN, JJ., concur.